**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANA SMITHEE, et al., | Case No.: 1:19-cv-00004-LJO-JLT |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTIONS TO |
| v. | DISMISS |
| CALIFORNIA CORRECTIONAL | |
| INSTITUTION, et al., | (Docs. 29, 32) |
| Defendants. | |

After Cyrus Ayers killed himself while in custody, the child, E.M. and Ayers' mother, Dana Smithee, filed this lawsuit. They allege Ayers was not provided proper medical care during his incarceration at the California Correctional Institution in Tehachapi and this resulted in his death. In their second amended complaint, Plaintiffs claim that Defendant Litt-Stoner, Chief Executive Officer for Health Care Services at CCI, Defendant Narayn, Chief Psychiatrist at CCI, and Defendants Seymour, Celosse and Nesson, psychologists at CCI, are liable for Ayers' death.

Defendants Litt-Stoner, Seymour, Nesson and Celosse have moved the Court to dismiss the action. Because the complaint fails to state a federal cause of action, the Court recommends it be **DISMISSED** with leave to amend.[1]

---

[1] The Court **OVERRULES** the objection stated in the "reply" filed the plaintiffs. The rule cited, Fed.R.Civ.P.27 does not set forth a page limitation for pleadings and Fed.R.App.P. 27—which, it appears plaintiff were actually attempting to cite, doesn't apply. Though Judge O'Neill has a standing order related to the number of pages for a reply (Doc. 6-1), this Court does not.

# I.     Factual Allegations

On or about February 2, 2018, Ayers died by hanging while he was an inmate at CCI. (Doc. 26 at 7, 11.) According to Plaintiffs, the Ayers was transferred from Kern Valley State Prison to CCI in November 2017. (Doc. 26 at 7.) The plaintiffs claim that by the time of his death, each of the Defendants knew or should have known that Ayers needed mental health treatment and that he was a suicide risk. (Doc. 26 at 7.) They allege Ayers expressed suicidal ideations and stated prior to his death, "What would you do if you came into my cell and saw me hanging?" (Doc. 26 at 8.)

According to Plaintiffs, while incarcerated at Kern Valley State Prison and at CCI, Ayers made at least two unsuccessful suicide attempts, which they conclude were known to each of the Defendants[2]. (Doc. 26 at 8.) Plaintiffs conclude also that Ayers' medical records from Kern Valley State Prison were available to each of the Defendants, and they indicated that Ayers had made suicidal statements and that he had expressed self-harm behavior within months of being transferred to CCI. (Doc. 26 at 8.) During his incarceration at Kern Valley State Prison and CCI, Ayers allegedly wrote multiple letters, expressing suicidal thoughts and ideations, and received letters, regarding his expressions of suicide. (Doc. 26 at 8.) The SAC claims that Ayers' letters were read or should have been read by each of the Defendants. (Doc. 26 at 8.)

The SAC claims that in or about the fall of 2017, Celosse removed Ayers from suicide watch. (Doc. 26 at 9.) Plaintiffs assert that beginning in or about November 2017, Narayn treated Ayers and diagnosed him with adjustment disorder with mixed anxiety and depressed mood. (Doc. 26 at 9.) Plaintiffs also allege that in September 2014, Narayn was placed on probation for five years by the California State Medical Board for repeated negligence, prescribing medications without prior examination, unprofessional conduct and inadequate record-keeping in his treatment of inmates. (Doc. 26 at 8.)

According to Plaintiffs, around December 2017, Ayers told Narayn that he had attempted suicide, that Ayers' brother had attempted suicide, and Ayers' grandmother had committed suicide.

---

[2] At the hearing, counsel conceded that he did not know where the suicide attempts occurred or, in fact, whether they occurred.  Instead, counsel admitted that records demonstrate that Ayers *reported* that he had attempted suicide twice in the past, but that counsel had not yet received any records documenting an actual suicide attempt by Ayers before his death. The Court questions whether the allegation made in paragraph 34 as written comports with the requirements of Rule 11.

(Doc. 26 at 9.) Plaintiffs assert that Narayn noted that Ayers was "positive" for suicidal behavior but did not make recommendations for any suicide preventions to be taken or to place Ayers on a suicide watch. (Doc. 26 at 9.) The SAC states that during his treatment of Ayers, Narayn prescribed him medications that are known to have side effects that include the inducement of suicidal behavior and suicidal ideation. (Doc. 26 at 9.) Plaintiffs allege that each of the Defendants failed to monitor the medications Ayers ingested. (Doc. 26 at 9-10.)

According to Plaintiffs, from approximately December 19, 2017 through January 22, 2018, on at least three occasions, Ayers made requests to CCI psychologist Seymour that he be allowed to see his clinician regarding his mental health. (Doc. 26 at 10.) The SAC alleges that Seymour noted Ayers was a low risk of suicide and made no recommendations for any suicide preventions to be taken and did not place Ayers on a suicide watch. (Doc. 26 at 10.)

The SAC claims that Litt-Stoner failed to implement policies at CCI, which are mandated by the CDCR Division of Correctional Health Care Services. (Doc. 26 at 10-11.) Additionally, Litt-Stoner allegedly failed to provide adequate suicide prevention and response training. (Doc. 26 at 11.)

## II.     Legal Standard

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). On a motion filed pursuant to Rule 12(b)(6), "review is limited to the complaint alone." Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss for failure to state a claim. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976). The Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court explained:

A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

Iqbal, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." Student Loan Marketing Assoc. v. Hanes, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment." Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

## III. Discussion and Analysis

## A. First Claim for Relief: Deliberate Indifference

Defendants allege that Plaintiffs fail to plead facts showing that moving Defendants knew of, and disregarded Ayers' serious medical need. (Doc. 29-1 at 12, Doc. 32-1 at 11, Doc. 37 at 9.)

### 1. Serious medical need

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

The Ninth Circuit has held heightened suicide risk to be a serious medical need. <u>Simmons v. Navajo County</u>, 609 F.3d 1011, 1018 (9th Cir. 2010). Although Plaintiffs have not established that Ayers' was an imminent suicide risk, because the defendants do not challenge whether Ayers suffered a serious medical need, the Court accepts that he did so for purposes of this motion.

### 2. *Deliberate indifference*

If a plaintiff establishes the existence of a serious medical need, he must then show that officials responded to that need with deliberate indifference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). In clarifying the culpability required for "deliberate indifference," the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

<u>Farmer</u>, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1193 (9th Cir. 2002) (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." <u>Id.</u> at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." <u>Holliday v. Naku</u>, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1991)). Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." <u>Hutchinson v. United States</u>, 838 F.2d 390, 393-94 (9th Cir. 1988). A claimant seeking to establish deliberate indifference must show "both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need <u>and</u> (b) harm caused by the indifference." <u>Conn v. City of Reno</u>, 591 F.3d 1081 (9th Cir. 2010) (emphasis added).

Deliberate indifference is a high legal standard. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer</u>, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)).

### a.     Defendant Litt-Stoner

Defendant alleges that Litt-Stoner keeping Narayn on staff despite Narayn being placed on probation by the California State Medical Board does not show deliberate indifference to Ayers' serious medical needs. (Doc. 29-1 at 12.) Defendant also contends that the SAC fails to allege a causal connection between Narayn's probation status and the treatment Ayers received. (Doc. 29-1 at 12.)

Additionally, Defendant argues that Plaintiffs' allegation that a statistical report showed CCI was among the worst of California's prisons in providing mental health care to inmates and Litt-Stoner failed to act on that report does not show deliberate indifference to Ayers' serious medical needs. (Doc. 29-1 at 13.) The SAC does not demonstrate in what manner Litt-Stoner failed to follow the recommendations or how following them would have led to different care for Ayers or would have prevented his death. (Doc. 29-1 at 13.)

The SAC alleges that Narayn was placed on probation for five years by the California State Medical Board for repeated negligence, prescribing medications without prior examination, unprofessional conduct and inadequate record-keeping in his treatment of inmates. (Doc. 26 at 8.) However, Plaintiffs fail to allege facts demonstrating that Litt-Stoner was aware of Narayn's history, that she had the authority to remove him from his position or, even, how Narayn's probationary status caused Ayers' death. Additionally, the SAC fails to allege facts to support that Litt-Stoner knew that allowing Narayn to treat Ayers presented a serious risk to Ayers' health or why this was the case. (Doc. 37 at 11.)

Plaintiffs state that Statistical Reports showed that CCI was ranked the lowest in terms of mental health services provided to inmates in California's state prisons, that CCI was one of two

facilities that were deemed to provide substandard mental health care, and that CCI "was the lowest state prison in the entire State of California in hiring mental health staff[3]." (Doc. 26 at 12.) However, these allegations do not demonstrate how Litt-Stoner should have acted to address these failures, that she had the authority to take action, or how these failures affected Ayers' care or caused his death. (Doc. 37 at 13.) It is entirely speculative to state that Litt-Stoner's choice to staff CCI with different employees would have prevented Ayers' death. None of these facts are tied to Ayers and, consequently, fail to demonstrate that Litt-Stoner knew of and acted with deliberate indifference to Ayers' medical condition. (Doc. 37 at 13.) Instead, the SAC states the results of the Statistical Reports by the Department of Corrections and claims Litt-Stoner ignored them. (Doc. 26 at 12.) See Gibson, 290 F.3d at 1188 ("When a defendant should have been aware of the risk of substantial harm but, indeed, was not, 'then the person has not violated the Eighth Amendment, no matter how severe the risk.'") Thus, Plaintiffs' claim against Litt-Stoner for deliberate indifference to his serious medical needs in violation of the Eighth Amendment is thus not cognizable and should be dismissed.

### b.    *Defendant Seymour*

Defendant alleges that though Ayers made three requests to Seymour to see a medical health "clinician" and Seymour did not place Ayers on suicide watch, Plaintiffs do not plead facts showing that Seymour knew Ayers was suffering a current, substantial risk of suicide. (Doc. 29-1 at 12.)

Significantly, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Accordingly, the Ninth Circuit has determined a prisoner must allege "the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" See Toguchi, 391 F.3d at 1058 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiffs fail to allege facts that support a conclusion that Seymour was aware of a significant risk of harm to Ayers' health. The SAC alleges that from approximately December 19, 2017 through

---

[3] The Court does not understand whether this means that CCI has the fewest number of mental health professionals, whether there are unfilled vacancies, that vacancies are filled at a slower rate or something else.

January 22, 2018, Ayers made at least three requests to Seymour (a psychologist) to be allowed to see his "clinician" regarding his mental health. (Doc. 26 at 10.) They allege no facts indicating that Ayers reported to Seymour why he wanted this consultation, no facts that Ayers was suicidal at that time and no facts Seymour saw signs that he was suicidal. Notably, Plaintiffs do not explain to whom Ayers was referring when he asked to see a "clinician." Seymour was a practicing and treating psychologist and was, therefore, Ayers' "clinician." Why Plaintiffs contend Seymour should have acted on Ayers' request differently is not supported by any factual allegations or how doing so would have prevented Ayers' death. Moreover, Plaintiffs fail to demonstrate how the denial of seeing a different mental health clinician is medically unacceptable given the fact that Ayers was being treated by Seymour.

To the contrary, Plaintiffs admit that Seymour believed Ayers demonstrated a low risk of suicide when failing to place Ayers on suicide watch. (Doc. 26 at 10, Doc. 37 at 12.) This does not constitute deliberate indifference even if it turns out that Seymour was wrong. It is not enough that the official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; the official must actually draw that inference. See Farmer, 511 U.S. at 837.

Additionally, as Defendants argue, though Plaintiffs conclude that medical records were available to Defendants, the SAC does not allege that Seymour actually reviewed such medical records. (Doc. 26 at 8, Doc. 37 at 9.) Likewise, there is no showing that Ayers' statement "What would you do if you came into my cell and saw me hanging?" was made to Seymour—or, indeed, to whom the statement was made—or that any Defendant heard or was told about this statement. (Doc. 26 at 33, Doc. 37 at 9.) Thus, Plaintiffs fail to allege facts sufficient to support a conclusion that the treatment he received fell below constitutionally unacceptable levels or that the defendant disregarded a known risk to Ayers' health. See Toguchi, 391 F.3d at 1058. As a result, Plaintiffs fail to state a cognizable claim against Seymour for a failure to provide adequate medical care. Accordingly, the Court recommends that the motions to dismiss the claim for deliberate indifference be granted as to Seymour.

### c. Defendant Celosse

In the SAC, Plaintiffs allege that in or about the fall of 2017, Celosse removed Ayers from suicide watch. (Doc. 26 at 9.) Notably, this occurred between three and five months before Ayers'

death. Thus, there appears to be a lack of causal connection between Celosse's action and the damage claimed, especially in light of the determination by Seymour made later that Ayers' demonstrated a low risk of suicide. (Doc. 26 at 10)

In any event, as noted above, it is not enough that Celosse be aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; Plaintiffs must allege facts to show that Celosse actually drew that inference. See Farmer, 511 U.S. at 837. To the contrary, the facts alleged demonstrate that Celosse drew the inference that no substantial risk of harm existed.

Additionally, Plaintiffs fail to allege facts sufficient to support a conclusion that the treatment Ayers received was "medically unacceptable" and that Celosse disregarded a substantial risk to Ayers' health. See Toguchi, 391 F.3d at 1058. There are no facts—as opposed to mere conclusions—that Celosse reviewed any available medical records or heard Ayers make any statements regarding hanging himself. (Doc. 26 at 8, 33, Doc. 37 at 9.) If Defendant was not aware of the risk, then the official has not violated the Eighth Amendment. See id. at 1057; See Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002)) (emphasis in original) ("Even if a prison official *should* have been aware of the risk, if he "was not, then [he] has not violated the Eighth Amendment, no matter how severe the risk."). Accordingly, Plaintiffs fail to state a cognizable claim for violation of the Eighth Amendment against Celosse.

### d.      *Defendant Nesson*

As Defendants state, the SAC does not include specific allegations as to Defendant Nesson. (See generally Doc. 26, Doc. 37 at 10.) Accordingly, the Court recommends that the motions to dismiss be granted as to Defendant Nesson.

## B.      Second Claim for Relief: Failure to Train (Defendant Litt-Stoner)

The second cause of action in the SAC alleges that Defendant Litt-Stoner failed to adequately train CCI staff, failed to implement policies at CCI that are mandated by the CDCR Division of Correctional Health Care Services, and failed to provide adequate suicide prevention and response training. (Doc. 26 at 16-18.) Defendant asserts that the SAC offers no explanation as to the training that would have prevented Ayers' death. (Doc. 29-1 at 14.) Defendant also argues that the remainder of the failure to train claim in the SAC lists generalized deprivations that occurred at CCI and fails to

state how Litt-Stoner can be held liable for these alleged deprivations given the facts alleged in this case. (Doc. 29-1 at 14-15.)

Under Section 1983, Plaintiffs must demonstrate that each defendant personally participated in the deprivation of their rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002). Thus, liability may not be imposed on supervisory personnel under Section 1983 on the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 129 S.Ct. at 1948-49 (2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 633 F.3d 1191 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

A supervisor's failure to train subordinates may give rise to individual liability under Section 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. See Canell v. Lightner, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused the constitutional violation[4]. Id. at 1214; see also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001).

Plaintiffs do not allege facts that show Litt-Stoner was aware of any training, policy or staff deficiency for the mental health staff at CCI or, if she was, that Ayers was at risk as a consequence. Though Plaintiffs state that Narayn was placed on probation for five years by the California State Medical Board for "repeated negligence, prescribing medications without prior examination, unprofessional conduct and inadequate record-keeping in his treatment of inmates," Plaintiffs fail to

---

[4] For example, one alleged training failure includes the failure to provide training related to "Mental Health evaluations for rules violations reports." Doc. 26 at 11. There is no indication that Ayers was ever charged with a rules violation or, if he was, that he suffered a violation report contemporaneous to his death or how the failure to evaluate his mental health at the time, caused his death. If this training failure does not relate to Ayers' death, the Court is at a loss as to why this is listed in the complaint. Likewise, Plaintiffs do not explain how having a robust training schedule on "Suicide reporting and reviews" (Id.) would have prevented Ayers' death.

allege facts demonstrating that Litt-Stoner was aware of Narayn's history, that Litt-Stoner had any role in the decision to retain Narayn in his employment or how his placement on probation or the facts giving rise to his probation, caused the damages claimed. (See Doc. 26 at 16-18.) Absent this, the Court can draw no inference that Litt-Stoner can be held liable merely because Narayn was on probation. As this Court previously observed, "[t]he cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious choices made with full knowledge that a problem existed." Woodward v. Kokor, 2017 U.S. Dist. LEXIS 91777, 2017 WL 2572456 (E.D. Cal. June 13, 2017) (citation omitted); see also Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (explaining that to impose liability for failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation"). However, there are no facts alleged regarding any knowledge on Litt-Stoner's part of problems or a pattern of violations by mental health staff at CCI or any demonstration that Litt-Stoner controlled these decisions. As such, because Plaintiffs fail to demonstrate that Litt-Stoner knew of any violations or deficiencies, Plaintiffs cannot allege that Litt-Stoner failed to act to prevent them. See Taylor, 880 F.2d at 1045.

The allegations in the SAC include a list of policies and training goals regarding suicide prevention that Plaintiffs claim Litt-Stoner failed to implement or provide. (Doc. 26 at 10-11.) However, it is not enough to simply provide a list and generically allege that training was inadequate. Plaintiffs must how these alleged responsibilities fall upon the Chief Executive Officer of Health Care Services at CCI. Also, the allegation must describe the relevant training that was not provided or was provided inadequately and allege facts to demonstrate how this caused Ayers' death. (Doc. 37 at 14.) Not only have Plaintiffs failed to demonstrate how the staff training was inadequate, they have not alleged facts showing that the inadequate training was a deliberate choice on the part of Litt-Stoner. See Canell, 143 F.3d at 1214. Plaintiffs fail to make specific factual allegations of conduct by Litt-Stoner that amounted to a failure to train and supervise other mental health staff, implement certain policies and adequately staff CCI.

Additionally, Plaintiffs allege that had minimal training, supervision or oversight been provided, immediate action would have been taken to implement suicide prevention measures that

would have saved Ayers' life, but this is a mere conclusion unsupported by facts. Consequently, the Court finds the facts alleged are not sufficient to support Plaintiffs' claim for failure to train against Litt-Stoner and recommends that the second claim for relief be dismissed with leave to amend.

**C.      Recoverable Damages - Federal Law Claims (Claims One and Two)**

In Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1103 (9th Cir. May 19, 2014), the Ninth Circuit confronted the question of whether pre-death pain and suffering damages were allowed in § 1983 suits brought in California. The defendants in that case argued that since Cal. Code Civ. Proc. § 377.34 barred a Ayers' estate to recover for the Ayers' pre-death pain and suffering, these damages should similarly be barred under § 1983. The Ninth Circuit disagreed and, in so doing, reasoned that "[o]ne of Congress's primary goals in enacting § 1983 was to provide a remedy for killings unconstitutionally caused or acquiesced in by state governments." Id. (citing Monroe v. Pape, 365 U.S. 167, 172-76 (1961)). The court concluded that since the "practical effect of § 377.34 is to reduce, and often eliminate, compensatory damage awards for the survivors of people killed by violations of federal law, . . . a prohibition against pre-death pain and suffering awards for a Ayers' estate has the perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim." Id. at 1103-04. Thus, pre-death pain and suffering awards are allowed for § 1983 cases where the victim died from the unconstitutional conduct of the defendant. Id.

That the successor can seek damages suffered by the decedent before his death, the complaint here does not attempt to do that.  Rather, the complaint seeks *only* damages suffered by E.M. and Ms. Smithee. (Doc. 26 at 16 ["Plaintiffs DANA SMITHEE and E.M., . . . have suffered general and special damages including but not limited to loss of love, companionship, comfort, care . . ."]; Doc. 26 at 18 [same].  Accordingly, the damages sought are not recoverable on the federal claims.

**D.      Qualified Immunity**

Due to the dearth of facts alleged to support the conclusions made by Plaintiffs, the Court will recommend they be granted leave to amend the complaint.  Thus, the Court declines to consider qualified immunity at this time.

**E.      Supplemental Jurisdiction**

The remaining claims in Plaintiffs' SAC arise under state law, including failure to summon

medical care, negligence and wrongful death. (See generally Doc. 26.) Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." Significantly, the Ninth Circuit determined that "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); see also Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

At this juncture—because Plaintiffs failed to state a cognizable claim under federal law—the Court declines to expend limited judicial resources analyzing the merits of the state law claims. If Plaintiffs adequately plead a federal claim, the Court will then entertain challenges to the sufficiency of the state law claim.

**IV.     Findings and Recommendations**

Plaintiffs fail to state a cognizable claim under federal law. However, it is not clear whether the factual deficiencies may be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987); see also Lopez, 203 F.3d at 1128. Therefore, Plaintiffs will be given **one** opportunity to file an amended complaint curing the deficiencies identified in this order.

Plaintiffs are advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). In addition, the amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Once Plaintiffs file an amended complaint, the original pleading no longer serves any function in the case. The amended complaint must bear the docket number assigned this case and must be labeled "Third Amended Complaint." Finally, Plaintiffs are warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1986) (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)).

///

13

Based upon the foregoing, the Court **RECOMMENDS**:

1.     Plaintiffs' Second Amended Complaint be **DISMISSED**; and

2.     Plaintiffs be granted leave to file a third amended complaint within 14 days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, Plaintiffs may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiffs are advised failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991); <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 834 (9th Cir. 2014).


IT IS SO ORDERED.

Dated:   **August 15, 2019**                          **/s/ Jennifer L. Thurston**
                                                                     UNITED STATES MAGISTRATE JUDGE