# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA SMITHEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA CORRECTIONAL INSTITUTION, et al., <br> Defendants. | Case No.: 1:19-cv-00004-LJO-JLT <br><br> FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTIONS TO DISMISS[1] <br><br> (Docs. 48, 49) |

After Cyrus Ayers killed himself while in custody, the child, E.M. and his mother, Dana Smithee, filed this lawsuit. They allege Ayers was not provided proper medical care during his incarceration at the California Correctional Institution in Tehachapi and this resulted in his death. In their third amended complaint, Plaintiffs claim that Defendant Narayan, Chief Psychiatrist at CCI, and Defendants Seymour and Celosse, psychologists at CCI, are liable for Ayers' death.

Defendants Litt-Stoner, Seymour, Nesson and Celosse previously moved the Court to dismiss the action. Because the second amended complaint failed to state a federal cause of action, the Court dismissed it with leave to amend. (Doc. 47.) On August 29, 2019, Plaintiffs filed a third amended complaint, which only includes the following defendants: Narayan, Seymour and Celosse. (Doc. 45.)

On September 20, 2019, Defendants Narayan, Seymour and Celosse moved the Court to

---

[1] Because the Court finds the parties' positions adequately set forth in the papers, the hearing on the motion is **VACATED**.

1

dismiss the action. (Docs. 48, 49.) Because the third amended complaint still fails to state a federal cause of action, the Court recommends it be **DISMISSED WITH LEAVE TO AMEND**.

I. **Factual Allegations**

On or about February 2, 2018, Ayers died while in custody. (Doc. 45 at 3.) According to Plaintiffs, Ayers was incarcerated within the California Corrections system around May 2015. (Doc. 45 at 4.) The Plaintiffs claim that during the entirety of his incarceration at multiple prisons within the State of California, Ayers was receiving mental health care. (Doc. 45 at 4.) They allege that around July 2016, Ayers expressed suicidal ideations, was determined to be a moderate risk of suicide, and was thereafter placed on a suicide watch. (Doc. 45 at 4.) According to Plaintiffs, in or about July 2017, while an inmate at Kern Valley State Prison, Ayers overdosed on prescription medications, which required him to be hospitalized. (Doc. 45 at 4.)

The Plaintiffs claim that Ayers' medical records, presumably generated while he was housed at KVSP, showed that during 2017, Ayers reported having made multiple suicide attempts and that efforts were made to help him to stop thinking about killing himself. (Doc. 45 at 4.) They allege that Ayers' medical records document risk factors, including a family history of suicide, self-injurious behavior, assaultive behavior and suicide attempts. (Doc. 45 at 4.)

According to Plaintiffs, around November 2017, Ayers was transferred from Kern Valley State Prison to CCI. (Doc. 45 at 4.) Plaintiffs claim that in November 2017, upon being transferred to CCI, Celosse conducted a suicide risk and self-harm evaluation, in which she noted that Ayers reported he wished to be dead, had an intensity ideation score of "10," and "had collected pills in preparation for suicide."[2] (Doc. 45 at 5.) They allege that Celosse reviewed Ayers' previous medical records and noted that Ayers' condition had significantly worsened over the previous few months and Ayers had a history of self-harm and suicide. (Doc. 45 at 5.) Plaintiffs also claim that in December 2017, Celosse noted that Ayers had "unremitting symptoms of a serious mental disorder" and had initiated self-injurious behavior. (Doc. 45 at 6.) Plaintiffs contend that Celosse chose not to place Ayers on suicide watch, chose not to recommend Ayers for suicide watch and chose not to recommend any medical

---

[2] The allegations do not clarify whether the Ayers' statement referred to the July 2017 event or whether he was asserting that he *currently* was stockpiling medications.

2

care to attempt to prevent his eventual suicide. (Doc. 45 at 5-6.)

According to Plaintiffs, around December 7, 2017, Ayers told Narayan that since transferring to CCI, he was not doing as well, and Ayers told Narayan that he wished he had a higher level of care, including group therapy and one-on-one sessions with a clinician. (Doc. 45 at 5.) Plaintiffs claim that Narayan reviewed Ayers' previous medical records and noted Ayers' positive history of self-harm and suicide. (Doc. 45 at 5.) Plaintiffs contend that Narayan chose not to place Ayers on suicide watch, chose not to recommend him for suicide watch and chose not to recommend any medical care to attempt to prevent his eventual suicide. (Doc. 45 at 5.) However, Narayan prescribed "dangerous" medications for Ayers over the course of approximately two months and that Narayan did not see Ayers during that time. (Doc. 45 at 6.)

Plaintiffs allege that Seymour reviewed Ayers' previous medical records and knew he was suicidal, and during a period of approximately six weeks before his death, on more than four occasions, Ayers asked Seymour that he be permitted to see his clinician regarding his mental health, but Seymour denied these requests. (Doc. 45 at 6.) Plaintiffs claim that Seymour chose not to place Ayers on a suicide watch, chose not to recommend him for suicide watch and chose not to recommend any medical care to attempt to prevent his eventual suicide. (Doc. 45 at 6.)

Plaintiffs contend that around January 8, 2018, CCI staff noted Ayers' history of "cheeking" medications, apparently in an attempt to prepare himself to overdose, and that this record was known by each of the Defendants, though they fail to indicate when the defendants came to know this. (Doc. 45 at 6.)

**II.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). On a motion filed pursuant to Rule 12(b)(6), "review is limited to the complaint alone." Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).

Allegations of a complaint must be accepted as true when the Court considers a motion to

dismiss for failure to state a claim. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976). The Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

Iqbal, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." Student Loan Marketing Assoc. v. Hanes, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Leave to amend should not be granted if "it is clear that the complaint could not be saved by any amendment." Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

**III.    Discussion and Analysis**

**A.    First Claim for Relief: Deliberate Indifference**

Defendants allege that Plaintiffs fail to plead facts showing that moving Defendants knew of, and disregarded Ayers' serious medical need. (Doc. 48-1 at 11-13; Doc. 49 at 4-8.)

*1.    Serious medical need*

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d

1133, 1136 (9th Cir. 1997) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

The Ninth Circuit has held heightened suicide risk to be a serious medical need. Simmons v. Navajo County, 609 F.3d 1011, 1018 (9th Cir. 2010). Although Plaintiffs have not established that Ayers' was an imminent suicide risk, because the Defendants do not challenge whether Ayers suffered a serious medical need, the Court accepts that he did so for purposes of these motions.

### *2. Deliberate indifference*

If a plaintiff establishes the existence of a serious medical need, he must then show that officials responded to that need with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In clarifying the culpability required for "deliberate indifference," the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

Farmer, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." Gibson v. County of Washoe, 290 F.3d 1175, 1193 (9th Cir. 2002) (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." Id. at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." Holliday v. Naku, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991)). Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or

intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). A claimant seeking to establish deliberate indifference must show "both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Conn v. City of Reno, 591 F.3d 1081 (9th Cir. 2010) (emphasis added).

Deliberate indifference is a high legal standard. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

### *a. Defendant Pratap Narayan*

Narayan contends that Plaintiffs' claim is factually insufficient. (Doc. 49 at 6-8.) Plaintiffs allege that around December 7, 2017, Ayers told Narayan that since transferring to CCI, he was not doing as well, and that he wished he had a higher level of care, including group therapy and one-on-one sessions with a clinician. (Doc. 45 at 5.) Plaintiffs allege that Narayan reviewed Ayers' previous medical records and noted Ayers' positive history of self-harm and suicide attempts. (Doc. 45 at 5.) There are no factual allegations that Narayan knew that Ayers' self-report and his history required him to take a different approach and to place Ayers on a suicide watch or to provide different or additional medical care. (Doc. 45 at 5.)

Plaintiffs further contend that Narayan chose to provide "dangerous prescriptions" for Ayers over the course of approximately two months and did not see Ayers during that time. (Doc. 45 at 6.) However, they fail to allege facts that it was medically necessary for Narayan to see the decedent during that time given the fact that Ayers was being seen by Celosse (Doc. 45 at 6) and Seymour (Id.)

Also, Plaintiffs have failed to allege facts about the medications that Narayan prescribed, such as whether those medications were medically justified in the situation, which two-month period they

6

were prescribed, or how they posed a danger[3] to Ayers. (Doc. 49 at 7.) Also notable is the fact that there is no factual allegation in the complaint that the medications played a role in Ayers' death. Rather, Plaintiffs allege only that Ayers died by suicide. (See Doc. 45.)

A defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." Gibson, 290 F.3d at 1193. The Court accepts that Narayan did not provide Ayers with the higher level of care Ayers' requested and did not play him on suicide watch. However, the allegations admit that Narayan did not fail to provide medical care, only that he did not provide the medical care that Ayers' wanted. As Defendant argues, mere differences of opinion as to the proper course of treatment for a medical condition do not give rise to a medical indifference claim. (Doc. 49 at 7.) Additionally, Defendant points out that no facts were alleged whether group therapy was available at the prison for an inmate with Ayers' custody and security level or if it was medically appropriate for Ayers. (Doc. 49 at 6-7.) Plaintiffs fail to plead facts showing Narayan was subjectively aware and actually drew the inference that there was an *imminent* substantial risk of serious harm to Ayers' health. (Doc. 49 at 7-8.) When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." See id. at 1188.

Of most significance, Plaintiffs have failed to plead facts showing a causal connection between Narayan's conduct and Ayers' subsequent suicide. (Doc. 49 at 8; Doc 52 at 3.) As Defendant points out, it appears that Plaintiffs allege that Narayan saw Ayers on just one occasion in December 2017 and have not alleged facts about any information brought to Narayan's attention about Ayers' condition or any medical treatment after this visit and before Ayers' death in February 2018. (Doc. 52 at 2.)

Thus, Plaintiffs fail to demonstrate that Narayan was aware that a substantial risk of harm

---

[3] The conclusion that the medication was "dangerous," does not advance the issues in this case. Virtually every medication is "dangerous" if not taken correctly. Plaintiffs do not allege facts that Narayn knew that Plaintiff was not taking the medications as prescribed, if that was the case, or that he was responsible for dispensing medications or that his duties included ensuring that those who were responsible for dispensing the medications did it in such a way to preclude the patient from appear to swallow medication when he, in fact, did not. Indeed, there is no allegation that before January 8, 2018, that anyone knew that Mr. Ayers was "cheeking" medication. Finally, the allegations do not demonstrate that if medications were found in the decedent's body at the time of his death, that these were the same medications that Narayn prescribed.

7

existed. Accordingly, Plaintiffs fail to state a cognizable claim for violation of the Eighth Amendment against Narayan.

### b. Defendant Celosse

Defendant contends that Plaintiffs plead no facts showing that Celosse knew of and disregarded Ayers' serious medical need. (Doc. 48-1 at 11.) Plaintiffs allege that in November 2017, Celosse conducted a suicide risk and self-harm evaluation on Ayers, in which she noted that he had a history of self-harm and suicide. (Doc. 45 at 5.) Plaintiffs also allege that Celosse noted that Ayers' condition had significantly worsened over the previous few months. (Doc. 45 at 5.) Plaintiffs further contend that in December 2017, Celosse noted Ayers had "unremitting symptoms of a serious mental disorder" and had initiated self-injurious behavior. (Doc. 45 at 6.) Plaintiffs then allege that despite knowing that history, Celosse "deliberately and consciously chose not to place Mr. AYERS on a suicide watch, chose not to recommend him for suicide watch, and chose not to recommend any medical care to attempt to prevent his eventual suicide." (Doc. 45 at 5-6.)

Significantly, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Accordingly, the Ninth Circuit has determined a prisoner must allege "the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" See Toguchi, 391 F.3d at 1058 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiffs fail to allege facts sufficient to support a conclusion that the treatment Ayers received was "medically unacceptable" and that Celosse disregarded a substantial risk to Ayers' health. See Toguchi, 391 F.3d at 1058. To the contrary, the facts fail to allege that Celosse's decisions were not medically supported. In making this observation, the Court accepts as true that Celosse was aware of Ayers' symptoms and history of self-harm and suicide when Celosse chose not to recommend Ayers for suicide watch. As Defendant argues, the facts do not demonstrate that Celosse knew Ayers was *acutely* suicidal or that he required an immediate change to his mental health care. (Doc. 53 at 7.) Without more, the facts suggest only that the Plaintiffs disagree with Celosse's medical judgment.

8

(Doc. 48-1 at 12-13; Doc. 53 at 8.) Plaintiffs also fail to plead facts demonstrating that Celosse's conduct in November or December caused Ayers' death in February. (Doc. 53 at 7.) Accordingly, Plaintiffs fail to state a cognizable claim for violation of the Eighth Amendment against Celosse.

### c. *Defendant Seymour*

Plaintiffs allege that during a period of approximately six weeks before his death, on more than four occasions, Ayers asked Seymour (a psychologist) to be allowed to see his mental health "clinician." (Doc. 45 at 6.) They allege no facts indicating that Ayers reported to Seymour why he wanted this consultation and no facts that Ayers was acutely suicidal at that time. Also, as the Court previously pointed out, Plaintiffs do not explain to whom Ayers was referring when he asked to see his "clinician." Seymour was a practicing and treating psychologist and was, therefore, a "clinician." Plaintiffs fail to demonstrate how the denial of seeing a different mental health clinician is a Constitutional violation; indeed, many insureds outside of prison do not get to see a provider of their choice. Plaintiffs fail to allege facts sufficient to support a conclusion that the treatment Seymour provided was "medically unacceptable" or that Seymour was aware of and disregarded a significant risk of harm to Ayers' health. See Toguchi, 391 F.3d at 1058.

In any event, Plaintiffs do not explain their contention that Seymour should have acted on Ayers' request differently or how her failure to do so caused Ayers' death. Most notably, Plaintiffs do not plead facts showing that Seymour knew Ayers' requests demonstrated that he was at imminent risk of suicide as opposed to ideation that was not acute (Doc. 48-1 at 13.).

Thus, Plaintiffs fail to state a cognizable claim against Seymour for a failure to provide adequate medical care. Accordingly, the Court recommends that the motion to dismiss the claim for deliberate indifference be granted as to Seymour.

**B. Recoverable Damages - Federal Law Claim**

In Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1103 (9th Cir. May 19, 2014), the Ninth Circuit confronted the question of whether pre-death pain and suffering damages were allowed in § 1983 suits brought in California. The defendants in that case argued that since Cal. Code Civ. Proc. § 377.34 barred a decedent's estate to recover for the decedent's pre-death pain and suffering, these damages should similarly be barred under § 1983. The Ninth Circuit disagreed and, in so doing,

reasoned that "[o]ne of Congress's primary goals in enacting § 1983 was to provide a remedy for killings unconstitutionally caused or acquiesced in by state governments." Id. (citing Monroe v. Pape, 365 U.S. 167, 172-76 (1961)). The court concluded that since the "practical effect of § 377.34 is to reduce, and often eliminate, compensatory damage awards for the survivors of people killed by violations of federal law, . . . a prohibition against pre-death pain and suffering awards for a decedent's estate has the perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim." Id. at 1103-04. Thus, pre-death pain and suffering awards are allowed for § 1983 cases where the victim died from the unconstitutional conduct of the defendant. Id.

That the successor can seek damages suffered by the decedent before his death, the complaint here does not attempt to do that. Rather, the complaint seeks damages suffered by E.M. and Ms. Smithee. (Doc. 45 at 8 ["Plaintiffs DANA SMITHEE and E.M., . . . have suffered general and special damages including but not limited to loss of love, companionship, comfort, care . . ."]). Accordingly, these damages sought are not recoverable on the federal claims.

To the extent Plaintiffs seek damages for Ayers' pain and suffering, Plaintiffs may be able to recover such damages. (Doc. 45 at 8 ["AYERS was deprived of his constitutional rights, which directly caused his suffering and eventual death."]). The Ninth Circuit in Chaudhry observed, "California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy." Id. at 1105. Thus, the court held that "[s]ection 377.34 . . . does not apply to § 1983 claims where the decedent's death was caused by the violation of federal law." Id. Accordingly, Plaintiffs would not be prohibited from recovering for Ayers' pre-death pain and suffering damages for their federal law claims.

**C.     Qualified Immunity**

Due to the dearth of facts alleged to support the conclusions made by Plaintiffs, the Court declines to consider qualified immunity at this time.

**D.     Supplemental Jurisdiction**

The remaining claims in Plaintiffs' third amended complaint arise under state law, including negligence and wrongful death. (See generally Doc. 45.) Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has

dismissed all claims over which it has original jurisdiction." Significantly, the Ninth Circuit determined that "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); see also Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

At this juncture—because Plaintiffs failed to state a cognizable claim under federal law—the Court declines to expend limited judicial resources analyzing the merits of the state law claims.

### IV. Findings and Recommendations

Plaintiffs fail to state a cognizable claim under federal law. In the previous findings and recommendations and hearing on the motions to dismiss, the Court detailed the factual deficiencies and how they could have been cured. However, because the Court is not yet convinced that the Plaintiffs cannot cure the deficiencies, it recommends they be given **one, final opportunity** to do so.

Based upon the foregoing, the Court **RECOMMENDS**:

1. Defendants' Motions to Dismiss (Docs. 48, 49) be **GRANTED**;
2. Plaintiffs' Third Amended Complaint be **DISMISSED with leave to amend.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, Plaintiffs may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///
///
///
///
///
///

Plaintiffs are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991); <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 23, 2019**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE