UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA SMITHEE, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CALIFORNIA CORRECTIONAL INSTITUTION, *et al.*,<br><br>　　　　Defendant. | No. 1:19-cv-00004-NONE-JLT<br><br>ORDER ADOPTING IN PART THE FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>(Doc. Nos. 66, 67, 79) |

　　　　This action came before the court after Cyrus Ayers, an inmate at California Correctional Institution ("CCI"), committed suicide by hanging on February 2, 2018. (Doc. No. 65 ¶¶ 8, 59.) Ayers's mother, Dana Smithee, and his daughter, E.M., by and through her *guardian ad litem*, Jennifer Montes, brought this civil rights, survival and wrongful death action under 42 U.S.C. § 1983 and California law. (*Id.* ¶¶ 4, 6-7.) Plaintiffs claim that defendants Rhonda Litt-Stoner, Pratap Narayan, Jennifer Seymour, and Karin Celosse were deliberately indifferent in treating Ayers's suicidal ideation in violation of his rights under the Eighth Amendment and, as a result, caused his death. (*Id.* ¶¶ 1-15.) Defendants twice moved to dismiss plaintiffs' second and third amended complaints, and the court granted those motions and dismissed those complaints with leave to amend.[1] (Doc. Nos. 41, 47, 54, 59.) Now before the court are defendants' motions to dismiss plaintiffs' fourth amended complaint ("4AC"). (Doc. Nos. 65-67.)

---

[1] The parties had stipulated to allowing plaintiffs to file the first and second amended complaints. (Doc. Nos. 15-16, 24-25.)

1

On March 30, 2020, the assigned magistrate judge found that plaintiffs' 4AC had failed to sufficiently plead a federal claim against any of the named defendants and recommended that the 4AC be dismissed without further leave to amend. (Doc. No. 79.) On April 10, 2020, plaintiffs objected to those findings and recommendations, arguing that the magistrate judge misapplied Rule 12(b)(6) standard in not construing the allegations in light most favorable to them. (Doc. Nos. 81 at 3-8; 83 at 3-8.)[2] Defendant Narayan filed a response thereto on April 17, 2020, (Doc. No. 84), and defendants Litt-Stoner, Seymour, and Celosse together filed a separate response to plaintiffs' objections on April 24, (Doc. No. 85). The court has reviewed this case *de novo* pursuant to 28 U.S.C. § 636 (b)(1)(C).

The court agrees with the magistrate judge's analysis and conclusion that defendants Narayan, Litt-Stoner, and Seymour should be dismissed from this action *but* concludes that defendant Celosse should not be dismissed.

**ANALYSIS**

**A.    Eighth Amendment Violation for Deliberate Indifference in Treating Ayers's Suicidal Ideation**

Before turning to the analysis, the court notes that both parties appear to be confused regarding the distinction between plaintiffs Eighth Amendment survival claim and the wrongful death claims under California law. See Garofalo v. Princess Cruises, Inc., 85 Cal. App. 4th 1060, 1072 (2000) ("'Although they are often lumped together without any distinction, they are, in fact, quite distinct.'" (citation omitted)); (see, e.g., Doc. No. 67-1 at 19-20 (defendants mixing plaintiffs' negligence claim as both a survival claim under California Civil Procedure Code § 377.34 and wrongful death claim under California Civil Procedure Code § 377.61)). A survivor cause of action belongs to the decedent but is brought on behalf of the decedent by the decedent's personal representative or successor in interest. San Diego Gas & Electric Co. v. Superior Court, 146 Cal. App. 4th 1545, 1553 (2007) (citing Cal. Code Civ. Proc.§§ 377.20, 377.30); see also id.

---

[2] Plaintiffs mislabeled the first objections, filed on April 10, 2020, as "opposition," so they refiled duplicative objections three days later with the correct label. (*See* Doc. Nos. 81-83.)

at 1553 ("[T]he survival statutes do not create a cause of action but merely prevent the abatement of the decedent's cause of action and provide for its enforcement' by the decedent's personal representative or successor in interest." (emphasis added)). The survivor claim here is Ayers's claim for violation of his Eighth Amendment rights resulting in his death, (see Doc. No. 65 ¶¶ 68-122), but by operation of California survival statutes, his claim passes on to his successor in interest or personal representative after his death. See Cal. Civ. Proc. Code § 377.30. Moreover, damages for a survival claim in California (contrary to what plaintiffs are seeking) are limited to "punitive damages and all the decedent's losses incurred prior to death." Cal. Code Civ. Proc. § 377.34 (emphasis added). Plaintiffs nonetheless seek damages for their own personal losses, such as their loss of Ayers's companionship—as opposed to damages Ayers suffered before his death—with respect to their survival claim. (See Doc. No. 65 ¶¶ 83, 97, 115; see also Doc. Nos. 67-1 at 23; 73 at 30 (plaintiffs appear to conflate the survival claim under § 1983 with their wrongful death claims brought under state law in responding to defendants' arguments)). Plaintiffs cannot do so under California law.

Turning now to the merits, the Supreme Court has "recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198–99 (1989). To establish Ayers's Eighth Amendment claim for failure to treat his suicidal ideation, plaintiffs "must show 'deliberate indifference' to [Ayers's] 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (alteration in original). Defendants do not dispute that Ayers's suicidal ideation was a "serious medical need." (*See* Doc. No. 67-1 at 5-25; *see also* Doc. No. 79 at 7.) Indeed, the Ninth Circuit has specifically recognized that "[a] heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010) (citations omitted). Defendants' chief contention here is that Celosse was not acting with deliberate indifferent to Ayers's suicidal ideation. (*See* Doc. No. 67-1 at 5-8.)

/////

Under the Eighth Amendment, deliberate indifference "includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" *Colwell*, 763 F.3d at 1066. "To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. Such a need exists if failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Id.* (citation omitted). The "subjective inquiry involves two parts." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013). First, plaintiffs "must demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk" to Ayers's safety. *Id.* (citation omitted). "Second, they must show that there was no reasonable justification for exposing the inmates to the risk." *Id.*

Here, plaintiffs allege as follows. In November 2017, psychologist Celosse[3] rated Ayers—on a Suicide Risk and Self-Harm Evaluation—with "an Intensity of Ideation Score of '10'" and noted that Ayers had "collected pills in preparation [for] suicide." (Doc. No. 65 ¶ 38) (alteration in original); *see, e.g., Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 n.1 (3d Cir. 1991) (recognizing that an official has knowledge of "a particular vulnerability to suicide" where there was "a psychiatric diagnosis identifying suicidal propensities." (citations omitted)). After reviewing Ayers' medical records, Celosse further noted that Ayers's "condition had *significantly* worsened over the past few months," and that he "had a history of self-harm and suicide." (Doc. No. 65 ¶ 39) (emphasis added.) Celosse subjectively understood the excessive risk to the health

/////

---

[3] Celosse is a psychologist at CCI. (Doc. No. 65 ¶ 13.) Her responsibilities as a psychologist entail:

> [B]ased on psychological tests and observations, case history, treatment progress and social factors, assesses patients and makes recommendations on admission, transfer, discharge and therapeutic activities; consults with medical personnel regarding findings of medical examinations and evidence of organic disturbances related to behavior disorders.

(*Id.* ¶ 15.)

4

or safety of Ayers. (*Id.* ¶¶ 69, 86.) Yet, Celosse "deliberately and consciously"[4] failed to recommend any treatments to Ayers. (*Id.* ¶¶ 41-42, 93, 95); *see also Colwell*, 763 F.3d at 1066 ("In deciding whether there has been deliberate indifference to an inmate's serious medical needs, we need not defer to the judgment of prison doctors or administrators." (citation omitted)). Ayers "was not placed under direct observation, no formal [Suicide Risk Assessment Checklist] was performed, no treatment plan was prepared, no wellness check was conducted." (Doc. No. 65 ¶¶ 35, 41) (alteration in original.) Because of Celosse's failure to take any action, Ayers successfully committed suicide on February 2, 2018. (*Id.* ¶¶ 42-46, 59, 68, 72, 79, 91, 96.) This deliberate and intentional disregard for the health and safety of CCI inmates is part of a documented and longstanding pattern beginning in 1999 until today. (*Id.* ¶¶ 22-23, 68-69, 71-76.)

Accepting these allegations as true, the court finds that plaintiffs have sufficiently alleged facts showing that Celosse must necessarily have known (both objectively and subjectively) the seriousness of the suicidal ideations Ayers was having when Celosse made her psychological

/////
/////
/////
/////
/////

---

[4] Although plaintiffs often use the word, "should," to describe what action defendants failed to take, plaintiffs frequently end those allegations with another allegation that defendants "deliberately and consciously" failed to provide Ayers with "constitutionally-mandated suicide prevention." (*See, e.g.*, Doc. No. 65 ¶¶ 41-46, 57-58.) Verbosity is "a poor ground for rejecting potentially meritorious claims"; "confusion or ambiguity" of this kind can be "dealt with by means other than dismissal." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Moreover, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181–82 (1962). Accordingly, the court construes these allegations together—in light most favorable to plaintiffs—to show that defendants failed to take remedial actions "deliberately and consciously." *See, e.g.*, *Estate of Vargas v. Binnewies*, No. 116-CV-01240-DAD-EPG, 2017 WL 2289357, at *4 (E.D. Cal. May 25, 2017) ("Generally, when considering a motion to dismiss such a claim, a district court must assess whether the plaintiff has pled sufficient facts to permit the court to infer the plaintiff had a 'serious medical need' and a defendant was 'deliberately indifferent' to that need." (citations omitted)).

assessment of Ayers.[5]  *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (holding that "deliberately indifference" is a question of fact that is "subject to demonstration in the usual ways, including inference from *circumstantial* evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was *obvious*." (emphasis added) (citations omitted)).  Construing the allegations further "in the light most favorable" to plaintiffs, *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009), the seriousness of Ayers's suicidal ideation appeared or should have appeared obvious to Celosse.  *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996) (where "the defendant had the requisite knowledge of substantial risk through circumstantial evidence of the risk's obviousness," "evidence of past injury caused by the same risk or evidence that a defendant had recognized the risk before" is unnecessary).  Still, Celosse allegedly made no recommendations on how to treat Ayers's serious suicidal ideation, and there was no reasonable justification for the lack of such a recommendations.  *See Farmer*, 511 U.S. at 842 (to establish deliberate indifference, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."); *see also Cortés–Quińones v. Jiménez–Nettleship*, 842 F.2d 556, 558, 560 (1st Cir. 1988) (in the summary judgment context holding that returning plaintiff, a psychiatrically disturbed prisoner, to his crowded jail without any psychiatric treatment, where he was later found dead, raised a genuine dispute of material fact as to whether there was deliberate indifference).  Within a few months of Celosse's assessment, Ayers successfully committed suicide.  (Doc. No. 65 ¶¶ 42-46, 59, 68, 72, 79, 91, 96.)  Ayers's death and Celosse's inaction fit squarely within a longstanding pattern of CCI staff disregarding the health and safety of inmates.  (*Id.* ¶¶ 22-23, 68-

---

[5] Plaintiffs do not directly plead that Celosse objectively knew the seriousness of Ayers's suicidal ideation.  But a 12(b)(6) review is not limited to just "direct allegations;" the court *must* also consider reasonable "inferential allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted).  If Celosse knew to give an Intensity of Ideation Score of "10" and to note that Ayers had a history of self-harm and suicide, include how Ayers's condition had gotten "significantly" worse, then the most reasonably favorable, inferential allegation that can be drawn is that Celosse objectively knew how serious Ayers's suicidal ideation was.  *See DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991) ("The requisite state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care." (citation omitted)).

1    69, 71-76.) Based on the foregoing allegations, the court finds that plaintiffs have pled a

2    plausible claim[6] that Celosse was deliberately indifferent to Ayers's Eighth Amendment rights

3    and caused his death.  *See Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)

4    (deliberate indifference may be shown "when prison officials deny, delay or intentionally

5    interfere with medical treatment, or it may be shown by the way in which prison physicians

6    provide medical care."); *see, e.g.*, *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985) (Because

7    defendants knew plaintiff had suffered seizures and that his epilepsy was not under control, and

8    yet took no action to prevent plaintiff's death, a reasonable juror could find that defendants were

9    acting with deliberate indifference).

10        The court recognizes that it previously dismissed plaintiffs' claim against Celosse based

11   on substantially similar allegations as the ones set forth in the 4AC. (*See* Doc. Nos. 47, 59.)

12   However, upon a careful review of the law as set out above, the court is now persuaded that

13   plaintiffs' Eighth Amendment claim against defendant Celosse has been adequately pled.  *See*

14   *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042–43 (9th Cir. 2018) ("The law of the

15   case doctrine does not, however, bar a court from reconsidering its own orders before judgment is

16   entered or the court is otherwise divested of jurisdiction over the order." (citation omitted)).

17   /////

18   /////

19   /////

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

---

[6] *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602–03 (7th Cir. 2009) ("A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

7

Consistent with its inherent power to reconsider interlocutory orders,[7] the court now *sua sponte* reconsiders its previous dismissal of Celosse as a defendant from this action without prejudice. *See Henderson v. Muniz*, No. 14-CV-01857-JST, 2018 WL 6331008, at *2 (N.D. Cal. Dec. 4, 2018) ("The basis of the Ninth Circuit's holding was that a trial court should be able to correct a prior order when it concludes it has made a mistake." (citation omitted)); *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM (JCx), 2010 WL 11469724, at *16 (C.D. Cal. Aug. 12, 2010) (noting that district courts have applied Ninth Circuit precedents "liberally in holding that a district court has authority to review any order prior to final judgment or appeal of the issue to be reviewed."). Therefore, to the extent the previous orders are inconsistent with this order, this order controls. *See, e.g., Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 123 F. Supp. 3d 1219, 1236 n.12 (C.D. Cal. 2015), *aff'd*, 780 F. App'x 467 (9th Cir. 2019) ("To the extent this ruling is inconsistent with the Court's analysis in a previous order, the Court hereby reconsiders its prior holding.").

1. Qualified Immunity

Defendants also contend that plaintiffs' Eighth Amendment claim should be dismissed as barred by qualified immunity. (Doc. Nos. 67-1 at 16-18; 77 at 10-12.) Because the magistrate judge did not reach this issue in the findings and recommendations, (*see* Doc. No. 79 at 20), the court turns to it now. "To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether the official's conduct violated a constitutional right; and (2) whether

---

[7] District courts have the inherent power "to rescind, reconsider, or modify an interlocutory order," which is "derived from the common law, not from the Federal Rules of Civil Procedure." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *see also Bucy v. Nevada Const. Co.*, 125 F.2d 213, 217 (9th Cir. 1942) ("Rule 60 does not affect, interfere with, or curtail the common-law power of the federal courts."). "Nothing in the Rules limits the power of the court to correct mistakes made in its handling of a case so long as the court's jurisdiction continues, i.e., until the entry of judgment." *Santa Monica Baykeeper*, 254 F.3d at 887. A "manifest error" from an interlocutory order may be reconsidered when "justice and good conscience" so require. *Bucy*, 125 F.2d at 217; *see also Laub v. Horbaczewski*, No. LACV1706210JAKKS, 2019 WL 2610951, at *4 (C.D. Cal. Apr. 29, 2019) ("In conducting a *sua sponte* review, a court is not bound by the standards that govern a party's motion for reconsideration." (citations omitted)). This power "may be exercised by the court either of its own motion or on motion or suggestion by a party or interested person." *Bucy*, 125 F.2d at 217; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (observing that district judges have the authority to reconsider interlocutory orders).

that right was 'clearly established' at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228–29 (9th Cir. 2019).

Since the court has concluded that plaintiff has stated a cognizable claim that defendants violated Ayers's Eighth Amendment right to constitutionally adequate medical care, the only remaining question in connection with defendants' motion to dismiss on this ground is whether that right was "clearly established" in Ayers's circumstance. *See A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). "'Clearly established' means that, *at the time* of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *D.C. v. Wesby*, __U.S.__, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (emphasis added); *see also Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these deputies in this case that their particular conduct was unlawful. To achieve that kind of notice, the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction.")

The obligation to provide specific caselaw need not lead to "absurd results" when there are "novel factual circumstances." *Hines*, 914 F.3d at 1230. As the Supreme Court further explained:

> It is *not* necessary, of course, that "the *very action* in question has previously been held unlawful." That is, an officer might lose qualified immunity even if there is no reported case "directly on point." But in the light of pre-existing law, the unlawfulness of the officer's conduct "must be apparent."

*Ziglar v. Abbasi*, __U.S.__, 137 S. Ct. 1843, 1866–67 (2017) (emphasis added) (citations omitted).

Most importantly for purposes of resolving the present motion, the disposition of qualified immunity at the pleading stage turns on whether, "viewing the [allegations] most favorably to [Ayers], and given existing case law at that time, it 'beyond debate' that the prison officials pursued a medically unreasonable course of treatment by declining" *not* to recommend any treatment to Ayers. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (alteration in

1  original).  Plaintiffs point to the decision in *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232 (9th
2  Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir.
3  2016), as the pre-existing law that clearly established Celosse's alleged inaction as unlawful.
4  (Doc. No. 74 at 31.)  In *Clouthier*, a plaintiff similarly died by hanging.  *See Clouthier*, 591 F.3d
5  at 1240.  Before his death, the plaintiff expressed his suicidal intent to the defendant, a mental
6  health specialist.  *Id.* at 1245.  The defendant knew plaintiff's suicidal ideation was "the real deal"
7  and that plaintiff was not "out of the woods," yet the defendant removed "key suicide prevention
8  measures" that were put in place to help plaintiff.  *Id.*  Based on these facts, the Ninth Circuit held
9  that there was a triable issue as to whether plaintiff's constitutional right was clearly established
10 and, thus, the defendant was *not* entitled to qualified immunity on summary judgment.  *Id.* at
11 1245, 1254; *see also Arellano v. Dean*, No. 15-CV-2247 JLS (JLB), 2020 WL 1157190, at *2-3,
12 6 (S.D. Cal. Mar. 10, 2020) (holding it was clearly established in May 2014 that the "[f]ailure to
13 report a prisoner's suicidal ideations is not an adequate response to such a serious medical need");
14 *Rocha v. Kernan*, No. EDCV 17-869-GW(FFMX), 2019 WL 2949031, at *14-15 (C.D. Cal. Mar.
15 13, 2019) (holding that while "such 'obvious' cases are rare" in qualified immunity context,
16 refusing to implement adequate suicide prevention policies "would seemingly fit the bill" and that
17 dismissal was inappropriate).
18        In light of the decision in *Clouthier*, as well as other similar decisions, and because the
19 court has concluded that plaintiffs have stated a cognizable Eighth Amendment claim against
20 defendant Celosse, dismissal on qualified immunity grounds is inappropriate at this time.  *See*
21 *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) ("Our denial of qualified immunity at this
22 stage of the proceedings does not mean that this case must go to trial" because "[o]nce an
23 evidentiary record has been developed through discovery, defendants will be free to move for
24 summary judgment based on qualified immunity.") (quoting *O'Brien v. Welty*, 818 F.3d 920, 936
25 (9th Cir. 2016)).
26 /////
27 /////
28 /////

**B.     State Law Claims[8]**

Under the California Government Claims Act, "no suit for money or damages" under California law may be brought against a California public entity or its employee "until a written claim therefore has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." Cal. Gov. Code § 945.4. "'Money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in tort, contract or some other theory." *Lozada v. City and County of San Francisco*, 145 Cal. App. 4th 1139, 1152 (2006). On this threshold issue, defendants argue that plaintiffs failed to file a government claim with respect to the state law claims for wrongful death on behalf of Smithee and E.M. before filing suit, as required by § 945.4. (Doc. No. 67-1 at 21-22.) Defendants have requested that the court take judicial notice of the government claim filed by plaintiffs on June 18, 2018. (*Id.*) (citing 67-2, Ex. A at 7); *see Khoja v. Orexigen*

---

[8] Unlike a survival claim that belongs to the decedent, a wrongful death claim belongs to and seeks to compensate "*specified* heirs of the decedent for losses suffered as a result of a decedent's death." *San Diego Gas & Elec. Co.*, 146 Cal. App. 4th at 1550–51 (emphasis added); *see also Nelson v. County of Los Angeles* (2003) 113 Cal. App. 4th 783, 789 (holding that "persons who are not in the chain of intestate succession" are barred from bringing a wrongful death claim). ). "Because a wrongful death action compensates an heir for his or her own independent pecuniary losses, it is one for 'personal injury to the heir.' Thus, in a wrongful death action the 'injury' is not the general loss of the decedent, but the particular loss of the decedent to each individual claimant." *Id.* (citations omitted). An heir's pecuniary loss "may include (1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship—but he may not recover for such things as the grief or sorrow attendant upon the death of a loved one, or for his sad emotions, or for the sentimental value of the loss." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006). "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Id.* Here, plaintiffs plead a "negligence" claim for the death of Ayers and seek damages for loss of companionship. (Doc. No. 65 ¶¶ 116-122.) Plaintiffs also plead a "wrongful death" claim based on defendants' negligence causing Ayers's death and ask for loss-of-companionship damages. (*Id.* ¶¶ 123-127.) Notwithstanding plaintiffs' separation of these claims, they are *essentially* the same claim for wrongful death based on negligence—in other words, it is a distinction alleged by plaintiffs without a legal difference. In addition, defendants—like plaintiffs—appear to be confused about the distinction between survival and wrongful death claims. (*See* Doc. No. 67-1 at 20.) Defendants argue, for instance, that § 377.34 limits the damages on Smithee's and E.M.'s wrongful death claims based on negligence. (*See id.*) It does not. Section 377.34 applies to survival claims—*not* wrongful death claims. *See San Diego Gas & Electric Co.*, 146 Cal. App. 4th at 1553.

*Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("'[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'" (citation omitted)). The court will do so. The government claim lists only Ayers as the claimant, even though California Government Code § 910(a) mandates that each claimant's name to be listed on the claim form. (*See* Doc. No. 67-2, Ex. A at 6); Cal. Gov. Code § 910(a). In effect, plaintiffs have filed a government claim only on behalf of Ayers, but not themselves. (*See* Doc. No. 77 at 15.) It follows that state claims brought by plaintiffs Smithee and E.M. are barred by § 945.4 due to this failure.

In opposition, plaintiffs argue in a conclusory manner that the government claim is in "substantial compliance" with Section 910(a), without any reasoning supporting that contention. (Doc. No. 74 at 10-11.) Under California law, courts are empowered to find a government claim to be "valid if it substantially complies with all of the statutory requirements for [a] valid claim even though it is technically deficient in one or more particulars." *Olson v. Manhattan Beach Unified Sch. Dist.*, 17 Cal. App. 5th 1052, 1060 (2017) (citation omitted). Critically, however, "the doctrine cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." *Sparks v. Kern Cty. Bd. of Supervisors*, 173 Cal. App. 4th 794, 800 (2009) (internal quotation marks and citation omitted). It is certainly arguable that listing the name of each claimant is an "essential element" of a government claim or a meaningful aspect of the statute. But the court need not reach this issue—which has not been briefed by either party—since "a plaintiff must allege facts demonstrating or excusing compliance with the [Government Claims Act's] claim presentation requirement." *State of California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004) (alteration in original). Plaintiffs here have pled no facts in the 4AC showing how they substantially complied with the claim presentation requirement. (*See* Doc. No. 65.) Section 945.4 therefore bars plaintiffs from bringing the wrongful death claims. Since this is the first time the court addresses this issue, (*see* Doc. Nos. 54, 79), plaintiffs will be granted leave to amend in this respect. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041–42 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a

clear showing that amendment would be futile." (citations omitted)).

**CONCLUSION**

For the reasons explained above, the court adopts the pending findings and recommendations (Doc. No. 79) *in part* as follows:

1. Defendants Narayan, Seymour, and Litt-Stoner are DISMISSED from this action;
2. Defendants' motion to dismiss plaintiffs' survival claim against Celosse based on Ayers's Eighth Amendment rights and plaintiffs' Fourteenth Amendment claim is DENIED;
3. Plaintiffs' wrongful death claims against Celosse are DISMISSED *with* leave to amend; and
4. Within thirty (30) days of service of this order, plaintiffs shall file an amended complaint or a notice that they have elected not to amend and further and wish to proceed only on their survival claim against defendant Celosse based on Ayers's Eighth Amendment rights and their Fourteenth Amendment claim.

IT IS SO ORDERED.

Dated:  **August 18, 2020**

UNITED STATES DISTRICT JUDGE

13