UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA SMITHEE, *et al.*<br><br>                Plaintiffs,<br><br>     v.<br><br>CALIFORNIA CORRECTIONAL INSTITUTION, *et al.*<br><br>                Defendants. | Case No. 1:19-cv-00004-JLT-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO (1) DENY DEFENDANT PRATAP NARAYN'S MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT; AND (2) EXTEND LEAVE TO FILE SIXTH AMENDED COMPLAINT<br><br>(Doc. 134)<br><br>**14-DAY DEADLINE** |

Pending before the Court is Defendant Pratap Narayn's ("Defendant") motion to dismiss Plaintiffs Dana Smithee and E.M.'s (hereinafter collectively "Plaintiffs") fifth amended complaint, filed February 28, 2022. (Doc. 134). On March 9, 2022, Plaintiffs filed an opposition to the motion to dismiss and Defendant filed a reply on March 31, 2022. (Docs. 135-36). For the foregoing reasons, the Undersigned will recommend Defendants' motion to dismiss be denied.

**Factual Background**

According to Plaintiffs' allegations, since 1999, this federal district has had a special master overseeing the mental health services of and the suicide prevention efforts by the California Department of Corrections and Rehabilitation ("CDCR"). (Doc. 129 at ¶ 14). Plaintiffs assert that the special master, referred to as the *Coleman* Court, has noted "a pattern of identifiable and describable

1

inadequacies in suicide prevention in the CDCR." *Id*. at ¶ 15.  Plaintiffs claim that on January 14, 2014, Lindsay M. Hayes, M.S. ("Hayes"), an auditor and expert, appointed by the *Coleman* court, issued the results of an audit of "all 34 Corrections prisons" from November 12, 2013, to July 24, 2014, which identified certain "ongoing" deficiencies. *Id*. at ¶¶ 16-17.  On April 17, 2017, the California State Auditor issued a report "identifying the deficiencies previously identified" in its correctional facilities that continued to exist. *Id*. at ¶ 20.[1]

Plaintiffs allege that from May 23, 2017, to February 15, 2018, Hayes conducted another audit of 23 prisons including the California Correctional Institution ("CCI") at the direction of the *Coleman* Court. *Id*. at ¶ 44.  Hayes found that even though inmates were being referred for reported suicidal ideation and self-injurious behavior, completion of suicide risk evaluations and suicide risk and self-harm evaluations were still not being performed. *Id*. at ¶ 45.  Plaintiffs assert that Hayes also found that safety planning for those with suicide risk, and the coordination between it and the suicidal and self-risk evaluations, was nearly nonexistent. *Id*. at ¶ 46.  Plaintiffs claim that "Hayes also found that 'compliance rates for annual suicide prevention block training of both medical and mental health staff remained very problematic,' and those trainings that were provided and attended were truncated, presented inadequately and too quickly, post-test reviews were not performed, and workshop workbooks were 'rarely distributed.'" *Id*. at ¶ 47.

In or about May 2015, Cyrus Ayers ("Decedent") was incarcerated in the California Corrections system. *Id*. at ¶ 13.  In 2016, Decedent was placed in the custody of Kern Valley State Prison ("KVSP"). *Id*. at ¶¶ 19, 24.  On or about April 27 or April 28, 2016, Decedent was "diagnosed with a psychotic disorder, adjustment disorder with mixed anxiety and depressed mood and placed on a suicide watch after expressing he was depressed and suicidal." *Id*. at ¶ 24.  Thereafter, Decedent was placed in a correctional treatment center for mental health until he was discharged on May 9, 2016. *Id*.

On May 20, 2016, Decedent stated he was suicidal, that he would hoard pills to attempt suicide and claimed "[e]veryone is out to get me." *Id*.  Decedent was placed on suicide watch. *Id*.  Again, on

---

[1] *Public Letter*, California State Auditor Report Number 2016-131 (Apr. 17, 2017), https://www.bsa.ca.gov/reports/2016-131/index.html (last visited Aug. 3, 2023).

May 24 and June 21, 2016, Decedent notified custody staff he was suicidal and was placed on suicide watch. *Id*. On March 30, 2017, through June 6, 2017, Decedent was diagnosed with psychosis, antisocial personality disorder, paranoid schizophrenia, anxiety, and mood swings. *Id*. In or about July 2017, Decedent overdosed on prescription medications, which required him to be hospitalized. *Id*. at ¶¶ 21, 24. On October 26, 2017, Decedent was again diagnosed with psychosis. *Id*. at ¶ 24.

In November 2017, Decedent was transferred from KVSP to CCI. *Id*. at ¶ 21. On November 22, 2017, Psychologist Karin Celosse ("Celosse") conducted an initial assessment of Decedent. *Id*. at ¶ 23. Decedent reported to Celosse his history of suicide attempts, his past issues, and his present mental condition. *Id*. at ¶ 24. Celosse identified Decedent to be at a moderate chronic risk of suicide. *Id*. at ¶ 25. On November 28, 2017, through January 31, 2018, Decedent made ten requests "for contact with mental health" (presumably, mental health staff at CCI). *Id*. at ¶ 27. Further, on four separate occasions between November 30, 2017, and December 27, 2017, Decedent exhibited "signs and symptoms which impacted daily functioning: including pressured speech, disorganized thought process, and delusions." *Id*. at ¶ 33.

On December 6, 2017, Defendant conducted an initial assessment of Decedent. *Id*. at ¶ 28. Defendant recorded Decedent's history of suicide attempts and "numerous other indicators of his risk for attempting suicide." *Id*. Decedent informed Defendant about "subliminals, insinuations—people trying to psychologically manipulate me because I had an affair with a foster mom before." *Id*. at ¶ 30. Decedent was noted to have a history of polysubstance dependence and was diagnosed with an adjustment disorder with mixed disturbance of emotions and conduct and psychosis. *Id*. at ¶ 29.

Defendant expressed doubt about the nature of Decedent's psychiatric condition, stating "[e]ven his 'delusions' (I am unconvinced they are truly delusions)…[h]is description of sx is more suggestive of somebody with an above-average intelligence and vocabulary, making a concerted effort to dictate his care…his records contained some additional info that was supportive of a consideration of likely impression-management, especially his [history of] hoarding meds, and his apparent misrepresentation of sx for secondary gain." *Id*. at ¶ 31. That same date, Defendant opined that Decedent "might be a good candidate for referral for psych testing (if possible) to [rule out] impression management/Malingering." *Id*. at ¶ 32.

On December 27, 2017, Decedent was diagnosed with disinhibited attachment disorder of childhood. *Id*. at ¶ 34. On January 2, 2018, Defendant noted Decedent's history of suicidality, diagnoses associated with an elevated risk of suicide, history of hoarding and overdosing on medication, and delusional ideation. *Id*. at ¶ 36. On January 25, 2018, Decedent informed a social worker, Robert Schetter, that he had attempted suicide multiple times with pills as well as by hanging. *Id*. at ¶ 37.

On January 29, 2018, Defendant saw Decedent for a third time and again noted his history of suicidality, diagnoses associated with an elevated risk of suicide, history of hoarding, and overdosing on medication. *Id*. at ¶ 39. Defendant also documented that Decedent reported "seeing things and shadows," "paranoia towards everyone," and that he reported having schizophrenia and needed antipsychotic medication. *Id*. Defendant opined Decedent's "history and presentation were 'suggestive primarily of impression-management, and non-therapeutic med-seeking behavior." *Id*. at ¶ 40. Defendant reported Decedent "wanted to be prescribed antipsychotic medication and to have a schizophrenia diagnosis documented 'because he wants to get SSI when released.'" *Id*. at ¶ 41. Defendant acknowledged Decedent's schizophrenia diagnosis in April 2017 but found that diagnosis was inconsistent with his "atypical and inconsistent description of sx, absence of functional impairment, and absence of other feature suggestive of a primary psychosis." *Id*. at ¶ 42. Approximately four days following this visit, on February 2, 2018, Decedent committed suicide by hanging. *Id*. at ¶ 43.

Plaintiffs allege that, given Defendant's awareness of Decedent's history of suicide attempts, psychiatric symptoms, mental health diagnoses, and multiple requests for mental health treatment, Defendant's failure to "order a greater level of care was medically unacceptable." *Id.* at ¶¶ 50, 57. Plaintiffs further allege that, given Defendant's expressed doubt and skepticism concerning Decedent's reported mental health and psychological conditions, he "unreasonably abandoned" "[a]ppropriate medical judgment" in failing to explore other reasonable alternatives and potential diagnoses. *Id*. ¶¶ 58, 60.

///

**Procedural Background**

On December 31, 2018, Plaintiffs filed a complaint in this Court naming the State of California, CCI, and Rhonda Litt-Stoner ("Litt-Stoner") as defendants. (Doc. 1). On January 7, 2019, the Court issued an order appointing Jennifer Montes as guardian ad litem for Plaintiff E.M. (Doc. 9). On May 6, 2019, Plaintiffs filed a first amended complaint adding Defendant, Jennifer Seymour ("Seymour"), Kelly Nesson, Ph.D. ("Nesson"), and Celosse as defendants. (Doc. 19). Plaintiffs asserted against defendants a claim for violation of the Eighth Amendment through 42 U.S.C. § 1983. *Id*. at 13-15. On May 24, 2019, Plaintiffs filed a second amended complaint adding against defendants claims for (1) failure to summon medical care in violation of Cal. Gov. Code § 845.6, (2) negligence, and (3) wrongful death in violation of CCP § 377.60. (Doc. 26).

On June 21, 2019, Litt-Stoner, Nesson, and Seymour filed a motion to dismiss Plaintiffs' second amended complaint. (Doc. 29). Celosse filed a motion to dismiss Plaintiffs' second amended complaint on July 17, 2019. (Doc. 32). On July 26, 2019, Plaintiffs filed a request for entry of default as to Defendant and an opposition to Celosse's motion to dismiss. (Docs. 33-34). On July 30, 2019, Defendant filed an opposition to Plaintiffs request for entry of default and requested additional time to respond to Plaintiffs' second amended complaint. (Doc. 35). The Court granted Defendant additional time to respond to Plaintiffs' second amended complaint and denied Plaintiffs request to enter a default. (Doc. 36).

Celosse, Litt-Stoner, Nesson, and Seymour filed a reply in support of their motions to dismiss on August 7, 2019. (Doc. 37). On August 12, 2019, Plaintiffs filed an opposition to Litt-Stoner, Nesson, and Seymour's motion to dismiss. (Doc. 38). On August 14, 2019, Defendant filed an answer to Plaintiffs' second amended complaint. (Doc. 40).

On August 15, 2019, the Honorable Magistrate Judge Jennifer L. Thurston[2] issued findings and recommendations to grant Defendants' motions to dismiss. (Doc. 41). Judge Thurston found Plaintiffs' second amended complaint failed to state a federal cause of action and recommended it be dismissed with leave to amend. *Id*. Thereafter, Plaintiffs filed a third amended complaint against

---

[2] In 2022, the Honorable Judge Jennifer L. Thurston was appointed and elevated to the position of U.S. District Judge. (Docs. 126-27).

5

1  Defendant, Celosse, and Seymour on August 29, 2019.  (Doc. 45). Specifically, Plaintiffs again
2  asserted claims of (1) deliberate indifference—cruel and unusual punishment through 42 U.S.C. §
3  1983, (2) negligence, and (3) wrongful death in violation of CCP § 377.60.  *Id*.  On September 9,
4  2019, the Honorable Chief District Judge Lawrence O'Neill issued an order adopting in full the
5  findings and recommendations, dismissing Plaintiffs' second amended complaint and deeming the
6  third amended complaint the operative pleading in this action.  (Doc. 47).

7  　　　　On September 20, 2019, Defendant, Celosse, and Seymour filed motions to dismiss Plaintiffs'
8  third amended complaint.  (Docs. 48-49).  On October 4, 2019, Plaintiffs filed an opposition to the
9  motions to dismiss, and thereafter, Celosse and Seymour filed replies on October 16 and 17, 2019.
10 (Docs. 51-53).  On October 23, 2019, Judge Thurston issued findings and recommendations to grant
11 the motions to dismiss Plaintiffs' third amended complaint with leave to amend.  (Doc. 54).  Judge
12 Thurston found Plaintiffs failed to state a cognizable claim for a violation of the Eighth Amendment as
13 to Defendant.  *Id*. at 6-8.  After receiving and considering the parties' objections and responses, on
14 December 5, 2019, Chief Judge O'Neill issued an order adopting the findings and recommendations in
15 full, granted the motions to dismiss and extended to Plaintiffs leave to file a fourth amended
16 complaint.  (Doc. 59).

17 　　　　On January 16, 2020, Plaintiffs filed a fourth amended complaint against Defendant, Litt-
18 Stoner, Celosse, and Seymour.  (Doc. 65).  Plaintiffs asserted against Defendant claims for (1)
19 deliberate indifference—cruel and unusual punishment through 42 U.S.C. § 1983, (2) negligence, and
20 (3) wrongful death in violation of CCP § 377.60.  *Id*.  On January 30, 2020, Defendant, Litt-Stoner,
21 Celosse, and Seymour filed motions to dismiss Plaintiff's fourth amended complaint.  (Docs. 66-67).
22 On March 10, 2020, Plaintiffs filed oppositions to the motions to dismiss and Defendants filed replies
23 on March 23 and 24, 2020.  (Docs. 73-74, 76-77).

24 　　　　On March 30, 2020, Judge Thurston issued findings and recommendations to grant the motions
25 to dismiss Plaintiffs' fourth amended complaint without leave to amend.  (Doc. 79).  Judge Thurston
26 found Plaintiffs failed to demonstrate that Defendant was aware that a substantial risk of harm existed
27 as to Decedent, and thus, failed to state a cognizable federal claim against Defendant.  *Id*. at 10-11.
28 After receiving and considering the parties' objections and responses, on October 16, 2020, the

Honorable District Judge Dale A. Drozd issued an order adopting in part Judge Thurston's findings and recommendations.  (Doc. 88).  Judge Drozd held that Plaintiffs failed to state a cognizable claim against Defendant, Litt-Stoner, and Seymour but that Celosse should not be dismissed from this action.  *Id*. at 2, 13.

On November 22, 2021, Plaintiff filed a motion to amend the fourth amended complaint "to plead additional facts learned in discovery that justify rejoining [Defendant] to this litigation."  (Doc. 115-3 at 2).  On December 7, 2021, Judge Thurston issued an order on the parties' stipulated request closing this action as to Celosse.  (Doc. 120).  On December 7, 2021, Defendant filed an opposition to Plaintiffs' motion to amend.  (Doc. 121).  On January 10, 2022, Judge Thurston issued an order granting Plaintiffs' motion to amend the fourth amended complaint.  (Doc. 128).

On January 11, 2022, Plaintiffs filed the operative, fifth amended complaint.  (Doc. 129).  Plaintiffs raise a claim for deliberate indifference—cruel and unusual punishment through the 42 U.S.C. § 1983, against Defendant.  *Id*.  On February 28, 2022, Defendant filed the instant motion to dismiss.  (Doc. 134).  On March 9, 2022, Plaintiffs filed an opposition and Defendant filed a reply on March 31, 2022.  (Docs. 135-36).

**<u>Legal Standard</u>**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement

if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

**Discussion and Analysis**

1. Deliberate Indifference Claim – Governing Law

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-99 (1989). To establish an Eighth Amendment claim on a condition of confinement, such as medical care, a Plaintiff must show: (1) an objectively, sufficiently serious, deprivation, and (2) the official was, subjectively, deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). These two requirements are known as the objective and subjective prongs of an Eighth Amendment deliberate indifference claim. *Willhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

To satisfy the objective prong, there must be a "serious" medical need. *Estelle v. Gamble*, 429 U.S. 87, 104 (1976). A medical need is serious if failure to treat it will result in "significant injury or the wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "[T]he conditions presenting the risk must be 'sure or very likely to cause ... needless suffering,' and give rise to 'sufficiently imminent dangers.'" *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

As to the subjective prong, there must be deliberate indifference. Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard"). Deliberate indifference is shown when a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; *see also Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839. *See Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1101 (9th Cir. 2019) ("The second prong is met upon showing of deliberate indifference, which, as *Farmer* makes clear, is shown adequately when a prison official is aware of the facts from which an inference could be drawn about the outstanding risk, and the facts permit us to infer that the prison official in fact drew that inference, but then consciously avoided taking appropriate action."). Of course, whether a defendant possessed subjective knowledge is a factual question that is "subject to

1 demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511
2 U.S. at 842.

3  A mere difference of opinion as to what medically acceptable course of treatment should be
4 followed does not establish deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.
5 1989) (plaintiff's evidence that a doctor told him surgery was necessary to treat his recurring abscesses
6 showed only a difference of opinion as to the proper course of care where prison medical staff treated
7 his recurring abscesses with medicine and hot packs). "[T]o prevail on a claim involving choices
8 between alternative courses of treatment, a prisoner must show that the chosen course of treatment
9 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an
10 excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058.

11  2. <u>Deliberate Indifference Claim – Analysis</u>

12  Here, Defendant does not dispute that Decedent had serious medical needs for mental health
13 conditions while incarcerated. (Doc. 134-1 at 11). Indeed, the Ninth Circuit has specifically
14 recognized that a heightened risk of suicide can present a serious medical need. *See, e.g., Simmons v.*
15 *Navajo Cnty., Arizona*, 609 F.3d 1011, 1018 (9th Cir. 2010) (citing *Conn v. City of Reno*, 591 F.3d
16 1081, 1095 (9th Cir. 2010)), *overruled on other grounds by Castro v. Cnty. of LA.*, 833 F.3d 1060 (9th
17 Cir. 2016) (en banc). Thus, the issue presented by Defendant's motion to dismiss is whether
18 Defendant was subjectively aware that Decedent faced a substantial risk of serious harm and
19 disregarded that risk by failing to take reasonable measures to abate it.

20  Defendant asserts Plaintiffs have failed to state a claim for deliberate indifference as he was
21 not subjectively aware or drew an inference that there was an imminent, substantial risk of serious
22 harm to Decedent. (Doc. 134-1 at 13-14). First, Defendant contends Plaintiffs' general references to
23 various special masters and audit reports about medical care and mental health have no bearing on this
24 action. *Id*. Next, Defendant asserts he never expressed a belief, judgment, or diagnosis that Decedent
25 was actively suicidal or was "on the brink of killing himself." (Doc. 136 at 5, 8). Instead, Defendant
26 alleges he perceived Decedent did not present a credible reporting of symptoms, and that Decedent
27 was, in effect, soliciting Defendant, his new doctor, to prescribe more medication. *Id*. at 5.
28

Defendant avers Plaintiffs do not claim a failure to respond or a failure to provide medical care but allege only a disagreement about the care that was provided. (Doc. 134-1 at 16). Defendant asserts "[m]ere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983" claim. *Id*. Defendant claims Plaintiffs have offered only "conclusory and speculative allegation" that he made a "conscious and deliberate decision not to place [Decedent] on a suicide watch" and have failed to show any causal connection between Defendant's conduct and Decedent's suicide. *Id*. at 17.

In contrast, Plaintiffs argue Defendant, as a custodian, was aware of Decedent's particular vulnerability to suicide, because Defendant "had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." (Doc. 135 at 8) (quoting *Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1025 n. 1 (3d Cir. 1991)). Plaintiffs claim Defendant's dismissal of Decedent's obvious symptoms "does not defeat Plaintiffs showing of deliberate indifference to [Decedent's] long and clear history and obvious risk of suicide." *Id*. at 8. Plaintiffs argue Defendant's failure to order a proper course of treatment constitutes deliberate indifference. *Id*. at 9.

Throughout his motion to dismiss (Doc. 134-1 p. 7, 11, 16) and reply brief (Doc. 136, *passim*), Defendant claims Plaintiffs must plead not merely that he was aware Decedent faced a substantial risk of serious harm (as articulated in *Farmer*), but rather, that he was aware Decedent faced a "substantial risk of *imminent* suicide" or was "*imminently* suicidal" (emphasis added). For this "imminence" proposition, Defendant cites the Ninth Circuit's opinion in *Simmons* (*supra*) and two unreported district court cases (*Garrett v. Grant*, CV 18-2137 PSG(JC), 2018 WL 3533459 (C.D. Cal. July 18, 2018) and *Rocha v. Kernan*, No. EDCV 17-869-GW(FFMX), 2018 WL 11348891 (C.D. Cal. Dec. 21, 2018)).

To the extent the Ninth Circuit in *Simmons* added an "imminence" requirement to the *Farmer* deliberate indifference test, it is not entirely clear whether and how – particularly at the pleading stage – that imminence requirement would apply to a defendant such as Defendant here (a correctional facility's chief psychiatrist attending to the care of an inmate). In *Simmons*, a defendant nurse placed an inmate on suicide watch some weeks before his ultimate suicide. 609 F.3d at 1014. The issue

11

confronting the Court was whether the defendant nurse's apparent acknowledgment that the inmate was potentially suicidal created an inference of subjective awareness the inmate was in "substantial danger." *Id.* at 1018. The Court, quoting a Seventh Circuit case, concluded that such actions did not demonstrate an awareness of a "substantial risk of *imminent* suicide." *Id.* (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 990 (7th Cir. 1998)). But on the same page of its opinion, the Court reiterated and reaffirmed its own, long-standing deliberate indifference standards, to wit: "To proceed to trial, [plaintiffs] must adduce evidence raising a triable issue that [the defendant nurses knew decedent] was *'in substantial danger' of killing himself* yet deliberately ignored such risk." *See id.* (quoting *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1248 (9th Cir.2010)) (emphasis added). *See also id.* ("We cannot agree, however, that the evidence supports the inference that [the defendant nurse knew decedent] "*was at acute risk of harm*" at the time he killed himself") (quoting *Conn*, 591 F.3d at 1097) (emphasis added).³

       At the pleading stage, and making all reasonable inferences in favor of Plaintiffs, the Court concludes Plaintiffs have adequately alleged that Defendant was aware the Decedent was in substantial danger of killing himself and at an acute risk of harm, and, thus, deliberately indifferent to Decedent's serious medical needs. As set forth above, Defendant saw Decedent on three occasions between December 6, 2017, and January 29, 2018, following "repeated requests for contact with mental health." (Doc. 129 at ¶¶ 27-28, 36, 39). During these visits, Defendant reviewed Decedent's medical history, including a history of suicide attempts and "numerous other indicators of his risk for attempting suicide," and noted the Decedent's "diagnoses associated with an elevated risk of suicide" and delusional ideations. *Id.* at ¶¶ 28, 36, 39. As such, Defendant should have been aware that Decedent previously had expressed an intent to commit suicide, had a history of suicide attempts, drug

---

³ Defendant also cites *Rocha v. Kernan*, No. EDCV 17-869-GW(FFMx), 2018 WL 11348891 (C.D. Cal. Dec. 21, 2018) for support that Plaintiffs' deliberate indifference claim should be dismissed. In that case, the Honorable District Judge George H. Wu granted defendants' motion to dismiss plaintiff's second amended complaint, with leave to amend, finding plaintiff failed to sufficiently allege a deliberate indifference claim. *Id.* at *1 n.1. However, in reviewing plaintiff's third amended complaint, Judge Wu found plaintiff adequately pleaded a deliberate indifference claim to survive a motion to dismiss. *Rocha v. Kernan*, No. EDCV 17-869-GW(FFMx), 2019 WL 2949031, at *8 (C.D. Cal. Mar. 13, 2019) ("At the motion to dismiss stage, and making all reasonable inferences in favor of Plaintiffs, the Court thinks that Plaintiffs have sufficiently alleged that Velez was deliberately indifferent to Erika's mental health needs.").

1 overdoses, previously had been placed on suicide watch, and manifested diagnoses revealing a
2 heightened risk of suicide. *Id*. at ¶ 24. Thus, in light of Decedent's significant history of mental
3 illness, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact
4 that the risk was obvious." *Farmer*, 511 U.S. at 842.

5       Defendant argues he did not believe Decedent was "actively suicidal or presented any
6 imminent risk of suicide" as he had doubts about Decedent's "sincerity and credibility." (Doc. 136 at
7 5). According to Plaintiffs' allegations, Defendant "expressed doubt about the nature of [Decedent's]
8 psychiatric condition" (Doc. 129 at ¶ 31), and that Decedent was presenting a case to Defendant to
9 improperly obtain prescription medications and a documented diagnosis of schizophrenia for a future
10 Social Security Claim. *Id*. at ¶¶ 31, 40-41; (Doc. 136 at 5-6). Faced with this credibility issue,
11 Defendant opined that Decedent "might be a good candidate for referral for psych testing (if possible)
12 to [rule out] impression management/Malingering." (Doc. 129 at ¶ 32). However, it appears,
13 Defendant did not attempt to place Decedent for a psychological test to confirm if he was engaged, in
14 fact, in impression management/Malingering. *See id.* ¶ 50 (noting Defendant was required to provide
15 a higher level of care through, *inter alia*, psychological testing).

16       Defendant's claim he was not subjectively aware Decedent was at a heightened risk of suicide
17 because he thought Decedent's symptoms were not credible is unavailing. Intentional ignorance of an
18 obvious risk is not a defense to deliberate indifference. *Farmer*, 511 U.S. at 842; *see Coleman v.*
19 *Wilson*, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (defendants cannot escape liability by turning a
20 blind eye to facts or inferences strongly suspected to be true). When the risk is not obvious, the
21 requisite knowledge may still be inferred by evidence showing that the defendant refused to verify
22 underlying facts or declined to confirm inferences that he strongly suspected to be true. *Farmer*, 511
23 U.S. at 842.

24       Defendant also asserts Plaintiffs have "failed to plead facts showing any causal connection
25 between any [Defendant] purposeful act or failure to act and [Decedent's] suicide. (Doc. 134-1 at 17-
26 18). "As a practical matter, plaintiffs who have already demonstrated a triable issue of fact as to
27 whether prison officials exposed them to a substantial risk of harm, and who suffered precisely the
28 type of harm that was foreseen, will also typically be able to demonstrate a triable issue of fact as to

causation." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1080-81 (9th Cir. 2013). Here, Plaintiffs' allegation that Defendant ignored Decedent's history and symptoms and failed to provide necessary care, are actions or omissions that plausibly could have led to Decedent's suicide. Therefore, at the pleading stage, it is reasonable to conclude that if Defendant had acted differently, he may have prevented Decedent's death.

At bottom, Plaintiffs allege that, given Defendant's awareness of Decedent's history of suicide attempts, psychiatric symptoms, mental health diagnoses, and multiple requests for mental health treatment, Defendant's failure to order a greater level of care was medically unacceptable. Plaintiffs further allege that, given Defendant's expressed doubt and skepticism concerning Decedent's reported mental health and psychological conditions, he "unreasonably abandoned" "[a]ppropriate medical judgment" in failing to explore other reasonable alternatives and potential diagnoses. (Doc. 129 at ¶¶ 58, 60). Moreover, Defendant acknowledged a test was available to confirm or dispel his belief Decedent was engaged in impression management/Malingering, but no test was given, and thereafter, Decedent committed suicide. (Doc. 129 at ¶¶ 32, 43, 50(c)). These allegations ultimately may not present triable issues of material fact, but at this stage of litigation, accepting the allegations as true and construing them in the light most favorable to Plaintiffs, the Undersigned concludes that Plaintiffs have sufficiently pleaded a deliberate indifference claim against Defendant.

3. Qualified Immunity

Defendant claims he is entitled to qualified immunity in the face of Plaintiffs' alleged Eighth Amendment violation. (Doc. 134-1 at 18-20); (Doc. 136 at 8-10). Generally, when a defendant asserts qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless the Court can determine, based on the complaint itself, that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (internal quotation marks omitted).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests, the need to hold public officials accountable when they exercise power

1 irresponsibly, and the need to shield officials from harassment, distraction, and liability, when they
2 perform their duties reasonably. *Id*. The doctrine is intended to "give[] government officials
3 breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v.*
4 *al-Kidd*, 563 U.S. 731, 743 (2011).

5  Determining whether an official is entitled to qualified immunity requires the Court to ask: "(1)
6 whether the official's conduct violated a constitutional right; and (2) whether that right was 'clearly
7 established' at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228-29 (9th Cir. 2019). A
8 plaintiff must prove both steps of the inquiry to establish the official is not entitled to qualified
9 immunity. *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018) (citing *Saucier v. Katz*, 533 U.S.
10 194, 201 (2001). The court may address these steps in any order. *Id*. at 815-16.

11  Defendant argues he is entitled to qualified immunity as the Supreme Court has held "[n]o
12 decision of this Court establishes a right to the proper implementation of adequate suicide prevention
13 protocols." (Doc. 134-1 at 19-20) (citing *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)). Defendant
14 claims Plaintiffs have not met their burden to show his "assessment and diagnosis of [Decedent] was
15 such a medically unreasonable course of conduct that every reasonable person would have known it
16 was unconstitutional under existing precedent and this conclusion was 'beyond debate.'" (Doc. 134-1
17 at 20); (Doc. 136 at 8-10).

18  Plaintiffs argue Defendant violated Decedent's "constitutional right to adequate medical care."
19 (Doc. 135 at 11) (citing *Conn*, 591 F.3d at 1095). Plaintiffs claim this right has been "clearly
20 established" within the Ninth Circuit and cites several cases in support of said right. (Doc. 135 at 12-
21 14). Further, Plaintiffs assert the *Coleman* court's reports that California's prison system employed
22 unconstitutional suicide prevention practices provided Defendant "fair warning that the failure to
23 identify, treat and supervise [Decedent's] risk of suicide was a violation of [Decedent's] constitutional
24 rights. *Id*. at 14-15.

25  As set forth above, the Undersigned has concluded Plaintiffs have adequately stated a
26 cognizable claim for violation of the Decedent's Eighth Amendment right to constitutionally adequate
27 medical care. Therefore, the Undersigned must address whether that right was "clearly established"
28 law at the time Decedent sought treatment from Defendant. "Clearly established means that, at the

time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *al-Kidd*, 563 U.S. 731 at 741) (internal quotations omitted); *see Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these deputies in this case that their particular conduct was unlawful") (emphasis removed). "To achieve that kind of notice, the prior precedent must be controlling—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a consensus of courts outside the relevant jurisdiction." *Id.* (quotations and citation omitted).

While Defendant is correct that, pursuant to the Supreme Court's decision in *Taylor*, it was not 'clearly established' the Constitution provides a right to 'the proper implementation of adequate suicide prevention protocols' (Doc. 134-1 at 19), that does not end the inquiry. While the Constitution does not demand a detailed suicide prevention policy that government entities must implement, it is clearly established that "the Eighth and Fourteenth Amendment[s] require custodian[s] of inmates to provide adequate mental health care." *NeSmith v. Cnty*, No. 15-cv-629 JLS(AGS), 2019 WL 1326701, at \*14 (S.D. Cal. Sep. 12, 2016) (citing *Doty v. Cnty of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994)). *See Williams v. County*, No. 2:15-cv-01760-SU, 2016 WL 4745179, at \*5 (D. Or. Sept. 12, 2016) ("Defendants reliance on *Taylor* is misplaced. … As of 2013, the Ninth Circuit had repeatedly held that pretrial detainees have a 'clearly established right' to mental health treatment, including suicide prevention, while in custody.") (collecting cases). Here, the Undersigned agrees with Plaintiffs that the cases they cite "clearly establish" a constitutional right to mental health treatment, including suicide prevention, while in custody. (Doc. 135 at 13-15) (citing *Clouthier*, 591 F.3d at 1245); *Van Orden v. Downs*, 609 Fed. App'x 474, 475 (9th Cir. 2015); *Conn*, 591 F.3d at 1095-96; *De Vincenzi v. City of Chico*, 592 Fed. App'x 632, 634 (9th Cir. 2015)).

Accepting all of Plaintiffs' allegations as true, Defendant deliberately failed to provide for Decedent's "clearly established" constitutional right to adequate mental healthcare. Plaintiffs allege Decedent had a serious medical need that Defendant discounted as impression management/malingering behavior. Further discovery of Defendants' subjective knowledge of certain facts will determine whether the unlawfulness of Defendants' actions and/or omissions were "beyond

16

debate" and not subject to qualified immunity. *Taylor*, 575 U.S. at 825. *See Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) ("[O]ur decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions.") (citation omitted).

### 4. Official Capacity under the Eleventh Amendment

Defendant also asserts "[t]he Eleventh Amendment bars jurisdiction over Plaintiffs' 'official capacity' claims." (Doc. 134-1 at 20-21). Specifically, Defendant claims he was acting within his official capacity as a CDCR-employed psychiatrist, and because of that "official capacity," the federal claim is barred. *Id*. The Undersigned finds this argument to be without merit.

Claims for damages against the state, its agencies, or its officers for actions performed in their official capacities are barred under the Eleventh Amendment unless the state waives its immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. *Hafer v. Melo*, 502 U.S. 21, 30 (1991). In this case, Plaintiffs expressly allege a claim of deliberate indifference against Defendant in his induvial capacity. *See* (Doc. 129 at ¶¶ 8, 69-70) ("Defendant…who at all times mentioned herein, was acting in his individual capacity, under color of State law."). Therefore, the Eleventh Amendment does not bar this Court from considering Plaintiffs' claim.

### 5. Recoverable Damages

Lastly, Defendant asserts Plaintiffs' allegation that "Plaintiffs Dana Smithee and E.M..,…have suffered general and special damages including but not limited to loss of love, companionship, comfort, care [and support]" (Doc. 134-1 at 21-22) (citing Doc. 129 at ¶ 73) renews a claim for damages that this Court previously has held to be not recoverable under § 1983. (*Id*. at 21) (citing Doc. 41 at 12; Doc. 54 at 9-10; Doc. 79 at 19). In response, Plaintiffs claim they "simply overlooked the improper damage request for Smithee and [E.M. and] this is an irrelevant typo." (Doc. 135 at 16). Plaintiffs argue they have asserted a proper request for compensatory and punitive damages that Decedent suffered, and Defendant has fair notice of these damages. *Id*.

In light of Plaintiffs' representations that they "overlooked the improper damage request" (Doc. 135 at 16) and in the interest of clarity, the Undersigned will recommend that Plaintiffs be directed to amend their complaint to expressly allege they are seeking damages for Decedent's pain and suffering. *See* Fed. R. Civ. P. 15(2) ("leave [to amend] shall be freely given when justice so requires."). *See also Chodos v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit amendment with 'extreme liberality'") (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)).

**Conclusion and Recommendations**

For the reasons set forth above, Plaintiffs' claim for deliberate indifference survives Defendant's motion to dismiss. Accordingly, IT IS HEREBY RECOMMENDED:

1. Defendant's motion to dismiss (Doc. 134) be DENIED; and
2. Plaintiffs be DIRECTED within seven (7) days of the entry of any Order adopting these Findings & Recommendations to file a sixth amended complaint for the limited purpose of clarifying the damages sought in connection with Decedent's pain and suffering.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days of being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 18, 2023**

UNITED STATES MAGISTRATE JUDGE